# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Janet, Jenner & Suggs, LLC,                 Civil No. 13-1695 (DWF/JJK)

             Plaintiff,

v.                                  **MEMORANDUM**
                             **OPINION AND ORDER**

Shawn Khorrami; and Khorrami,
Boucher, Sumner, Sanguinetti, LLP
(formerly known as Khorrami, Pollard &
Abir, LLP),

             Defendants.

---

Elisha N. Hawk, Esq., Janet, Jenner & Suggs, LLC, counsel for Plaintiff.

Paul A. Sortland, Esq., Sortland Law Office, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Defendants Shawn Khorrami's ("Khorrami")
and Khorrami, Boucher, Sumner, Sanguinetti, LLP's (formerly known as Khorrami,
Pollard & Abir, LLP) ("Khorrami Law") (collectively "Defendants") motion to dismiss.
(Doc. No. 32.)  For the reasons set forth below, the Court denies Defendants' motion.

## BACKGROUND

Plaintiff Janet, Jenner & Suggs, LLC ("Plaintiff") is a law firm based in Maryland.
(Doc. No. 42, Am. Compl. ¶¶ 1, 5.)  At the time of the interactions underlying this
lawsuit, Plaintiff had at least one attorney at its firm licensed to practice law in

Minnesota.  (*Id.* ¶ 15.)  Plaintiff brought suit against Khorrami and Khorrami Law in this Court on June 28, 2013.  (*See generally* Doc. No. 1, Compl.)  Khorrami Law is based in California, and Khorrami is a partner with Khorrami Law.  (Am. Compl. ¶¶ 2-4.)

Plaintiff alleges that Defendants sought Plaintiff to assist them in filing a number of cases in federal court in the District of Minnesota.  (*Id.* ¶¶ 9-10.)  Defendants represented fifty-three[1] women with claims relating to injuries developed as a result of using certain hormone therapy.  (*Id.*)  Plaintiff alleges that Defendants wished to file their lawsuits in Minnesota based on the state's favorable statute of limitations.  (*Id.*)

Specifically, Plaintiff alleges that Khorrami contacted Plaintiff by phone through one of Plaintiff's principals Robert K. Jenner ("Jenner").  (*Id.* ¶¶ 10-12.)  Plaintiff alleges that at that time, Khorrami and Jenner agreed on work and fee arrangements which included a five percent local counsel fee.  (*Id.* ¶¶ 10-14.)  Plaintiff alleges that Jenner sent an e-mail which included this fee and some of Plaintiff's responsibilities, and also attached a draft complaint for Defendants' use and Defendants confirmed receipt.  (*Id.*)

Plaintiff alleges that it drafted and provided the complaint, which Defendants used, and then filed the fifty-three cases in June 2008 through one of its attorneys who was licensed to practice law in Minnesota.  (*Id.* ¶ 15.)  Ultimately, the cases were transferred to a Multi-District Litigation ("MDL") court in Arkansas.  Plaintiff alleges that it continued to monitor the case docket.  (*Id.* ¶ 16.)

---

[1]     Plaintiff's complaint refers to fifty-three cases, but its Memorandum of Law in Opposition to Defendants' Motion to Dismiss refers to forty-nine cases.  For simplicity, the Court will refer to fifty-three cases as alleged in the Complaint.

Plaintiff alleges that on or about 2011, Defendants negotiated and finalized settlement for the cases, but did not inform Plaintiff.  (*Id.* ¶¶ 17-18.)  As a result of the settlement, Defendants have made distributions to their clients and themselves.  (*Id.*)  Plaintiff alleges that it contacted Defendants on multiple occasions about honoring the agreement regarding local counsel fees, and Defendants have not paid.  (*Id.* ¶ 18.)

In its Amended Complaint, Plaintiff asserts the following claims:  (1) breach of contract; (2) unjust enrichment; and (3) quantum meruit.  (*Id.* ¶¶ 19-38.)  In its motion to dismiss, Defendants seek dismissal on two grounds.  (Doc. No. 32.)  First, Defendants argue that this Court lacks personal jurisdiction over Defendants because they, and Plaintiff, are not in Minnesota and did not avail themselves of the privileges of the forum state in any way.  (Doc. No. 33, Def. Br. at 5-9.)  Second, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted because the underlying fee-splitting agreement is unenforceable for violating public policy.  (*Id.* ¶¶ 9-11.)  Plaintiff disagrees with both of Defendants' arguments, and argues that this Court has jurisdiction because Defendants availed themselves of the privileges of the forum state when they sought the benefits of pursuing legal claims in Minnesota and that they have sufficiently stated a cause of action based on the oral and written contracts alleged in detail in the complaint.  (*See generally* Doc. No. 39, Pl. Br. at 1-11.)

## DISCUSSION

### I.    Fed. R. Civ. P. 12(b)(6)

#### A.    Legal Standard

Granting a motion to dismiss pursuant to Rule 12(b)(6) is proper where plaintiff has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing

4

*Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

### B.    Merits

Defendants argue that Plaintiff has failed to state a claim because the attorney fee-splitting arrangement in dispute fails to comply with Rule 1.5(e) of the Minnesota Rules of Professional Conduct, and that similar arrangements have been deemed to violate public policy and are unenforceable as a result.  The Court finds that this argument is premature.  The Court does not yet have enough information to allow it to determine whether the fee arrangement is reasonable or to determine whether the Rule 1.5(e) requirements have been met.

Furthermore, Plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 547.  Plaintiff has sufficiently pled facts that could show that Plaintiff and Defendants had an agreement when they exchanged e-mails, documents, and communicated by telephone; that Plaintiff conferred a benefit when it acted as local counsel; and that Defendants failed to uphold the agreement when they did not pay Plaintiff for its services.[2]  The same facts pled by Plaintiff support both their claims for unjust enrichment[3] and quantum meruit.[4]

---

[2]     A claim for breach of contract requires proof of the following:  (1) the formation of a contract; (2) the performance of conditions precedent by the plaintiff; and (3) the breach of the contract by the defendant. *Thomas B. Olson & Associates, P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (citing *Briggs Transp. Co. v. Ranzenberger,* 299 Minn. 127, 129, 217 N.W.2d 198, 200 (1974)).  Whether a

(Footnote Continued on Next Page)

Thus, Plaintiff has sufficiently stated its claims and Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is denied.

## II.   Fed. R. Civ. P. 12(b)(2)

### A.   Legal Standard

In addition, Rule 12(b) allows a court to dismiss a case where the court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). The Court must view submissions in the light most favorable to the nonmoving party. *Stanton v. St. Jude Med., Inc.*, 340 F.3d 390, 693 (8th Cir. 2003). Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully

---

(Footnote Continued From Previous Page)
contract exists generally is a question for the fact-finder. *Id.* (citing *Morrisette v. Harrison Int'l Corp.,* 486 N.W.2d 424, 427 (Minn.1992)).

[3]   Generally, a claim for unjust enrichment can be maintained when "one man has received or obtained the possession of the money of another, which he ought in equity and good conscience to pay over." *Klass v. Twin City Fed. Sav. & Loan Ass'n*, 190 N.W.2d 493, 494-95 (Minn. 1971) (internal citations and quotations omitted).

[4]   A party may recover under quantum meruit where he or she has conferred a benefit to another and has not received reasonable compensation for this act. *Busch v. Model Corp.*, 708 N.W.2d 546, 552 (Minn. Ct. App. 2006) (citing *Frankson v. Design Space Int'l,* 394 N.W.2d 140, 145 (Minn. 1986)).

availed itself of the privilege of conducting activities within the forum state, thus

invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"[T]hose who live or operate primarily outside a State have a due process right not

to be subjected to judgment in its courts as a general matter," however, jurisdiction can

exist in two ways. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011).

General jurisdiction exists where a defendant has "continuous and systematic" contacts

with the forum state and confers personal jurisdiction even when the cause of action has

no relationship with those contacts. *See Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 414-16 (1984). However, the exercise of specific jurisdiction may be

proper when a defendant "purposefully avails itself of the privilege of conducting

activities within" a forum state and to the extent that the forum state exercises jurisdiction

"in a suit arising out of or related to the defendant's contacts with the forum." *Nicastro*,

131 S. Ct. at 2787-88 (internal citations omitted). For specific jurisdiction, the matters

relating to the lawsuit must have had some connection with the forum state.

*Helicopteros*, 466 U.S. at 414.

In addition, in determining whether a court has personal jurisdiction over a

non-resident defendant, a court must ordinarily satisfy both the requirements of the state

long-arm statute and of federal due process. A federal court must employ a two-step

inquiry to determine whether it has jurisdiction: a court must examine, "(1) whether the

facts presented satisfy the forum state's long-arm statute, and (2) whether the

non-resident has minimum contacts with the forum state, so that the court's exercise of

jurisdiction would be fair and in accordance with due process." *Soo Line R.R. Co. v. Hawker Siddeley Can., Inc.*, 950 F.2d 526, 528 (8th Cir. 1991). The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc*., 65 F.3d 1427, 1431 (8th Cir. 1995).

> **B.     Merits**

The Eighth Circuit has established a five-factor test to determine whether personal jurisdiction exists:  (1) the nature and quality of a defendant's contacts with the foreign state; (2) the quantity of such contact; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Stanton*, 340 F.3d at 694. The third factor distinguishes general from specific jurisdiction. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citations omitted). The first three factors are considered to have primary importance and the last two are secondary factors. *Id.*

Specific jurisdiction is at issue in this case. Defendants argue that there is "virtually no contact" between Defendants and Minnesota. (Def. Br. at 7.) Defendants argue that all contact took place outside of Minnesota (through attorneys in their offices in Maryland and California) and that none of the involved parties actually came to Minnesota. Defendants also argue that because the matters were quickly transferred to Arkansas, there was little involvement with the Court in Minnesota. Finally, Defendants argue that because there are no Minnesota residents involved in this case and the forum is

inconvenient to both parties, jurisdiction does not exist.  The Court disagrees and finds that specific jurisdiction exists.

Here, as Plaintiffs argue, Defendants have purposefully availed themselves of the benefits of the jurisdiction of Minnesota.  Plaintiffs have sufficiently pleaded facts showing an adequate type and quality of Defendants' contacts with the Minnesota to meet the first factor.  Defendants chose to file their cases in Minnesota and, in fact, admittedly sought out Minnesota in order to avail themselves of the privilege of Minnesota's apparently generous statute of limitations.  Defendants also availed themselves of the use and benefit of the Court in Minnesota and its rules and processes when the lawsuits were filed.  If Defendants had not been able to, or had not, filed in Minnesota, their cases could not have been filed, and their clients would have lost their claims, as well as the distributions that they have received as a result of their cases.  Defendants sought the filing of not only one case, but fifty-three cases in Minnesota.  The fact that Defendants were on the dockets for these cases in Minnesota makes it clear that Defendants anticipated the possibility of literally being "haled" into court as counsel of record.  More importantly, Defendants could also anticipate being haled into court for issues arising out of the filing of those lawsuits—here, a fee dispute relating directly to those filings.  The fact that Defendants have not physically been to Minnesota does not change this analysis.  *See Burger King*, 471 U.S. at 476; *see also Life Share Collateral Holdings, LLC v. Strauss*, Civ. No. 12-2504, 2013 WL 2420478, at *4-5 (D. Minn. June 3, 2013).  Moreover, if the cases had not been moved to the MDL in Arkansas,

Defendants would have had to litigate the cases in Minnesota.  They cannot claim that they could not have anticipated any contacts with or benefit from Minnesota.

As to the second factor, Defendants' contact is of sufficient quantity given the sheer volume of cases filed with the Court.  Moreover, having limited interactions with the forum in question is not necessarily sufficient to defeat personal jurisdiction.  *See, e.g., Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003); *see also W. Thrift & Loan Corp.*, Civ. No. 11-3644, 2012 WL 1021681, at *3 (D. Minn. March 27, 2012) (holding that the Court had specific jurisdiction with respect to an out-of-state lawyer who had not visited Minnesota, was not licensed to practice in Minnesota, and did not have offices in Minnesota, but who filed an unsuccessful motion for pro hac vice with the intent of attempting representation in Minnesota).

Regarding the third factor, the cause of action is sufficiently related to Defendants' contacts with the forum state.  Defendants sought out Plaintiff to serve as local counsel for filing fifty-three of Defendants cases.  Plaintiff now seeks payment for those very services.  Thus, the actions giving rise to the lawsuit—the filing of lawsuits in Minnesota—took place in Minnesota.

Finally, as to the remaining two factors, which are secondary, the Court finds that these do not outweigh the state's interest in adjudicating matters where lawyers and law firms purposefully avail themselves of the resources and laws, specifically the statute of limitations, of a forum.

In sum, Plaintiffs have sufficiently stated a claim that Defendants had adequate contact with Minnesota when they purposefully availed themselves of the benefits and

privileges of conducting a number of lawsuits in Minnesota and specifically benefitted from the statute of limitations in Minnesota that was relevant to their cases. Defendants certainly could have anticipated being haled into court when they availed themselves of the courts in Minnesota, and so finding does not "offend traditional notions of fair play and substantial justice." The Court therefore denies Defendants' motion to dismiss for lack of personal jurisdiction.

## ORDER

NOW, THEREFORE, based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Dismiss (Doc. No. [32]) is **DENIED** in its entirety.


Dated:  January 31, 2014                          s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge